# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
### WESTERN DIVISION



| | | |
|---|---|---|
| **BANK UNITED,** | ] | |
| Appellant, | ] | |
| | ] | |
| vs. | ] | CV-00-N-2141-W ✓ |
| | ] | |
| **JESSIE M. MANLEY,** | ] | |
| Appellee. | ] | |
| | ] | |
| | | |
| **FLEET MORTGAGE GROUP, INC.,** | ] | |
| Appellant, | ] | |
| | ] | |
| vs. | ] | CV-00-N-2149-W |
| | ] | |
| **JOHNNY T. LITTLE,** | ] | |
| Appellee. | ] | |
| | ] | |
| | | |
| **MARY E. MORROW,** | ] | |
| Appellant, | ] | |
| | ] | |
| vs. | ] | CV-00-N-2150-W |
| | ] | |
| **COUNTRYWIDE HOME LOANS, INC.,** | ] | |
| Appellee. | ] | |
| | ] | |
| | | |
| **GE CAPITAL MORTGAGE SERVICES, INC.,** | ] | |
| Appellant, | ] | |
| | ] | |
| vs. | ] | CV-00-N-2151-W |
| | ] | |
| **WILBURN B. HAGER et al.,** | ] | |
| Appellee | ] | |
| | ] | |

ENTERED

NOV 2 9 2001

20

## Memorandum of Opinion

### 1.    Introduction and Background

The court has for consideration the consolidated appeals of four creditor-parties to separate adversary proceedings in bankruptcy. The appeals present the common question of whether a bankruptcy court has the authority to exercise subject matter jurisdiction over a debtor class action alleging violations of the Bankruptcy Code by a creditor in its proof of claim.[1]

On 19 March 1999 the appellee Jessie M. Manley ("appellee") petitioned for Chapter 13 bankruptcy and scheduled appellant Bank United ("appellant") as a creditor holding a mortgage on her home with an arrearage of $586.47. *See* Mem. of Dec., 30 June 2000, at 1-2 (Stilson, B.J.). Concurrently with the petition, appellee filed a Chapter 13 plan in which she proposed to pay the appellant a stipulated amount over a period of 36 months, and pay current mortgage payments directly to the appellant. *See id.* at 1-2. This plan was confirmed by order on 3 May 1999 without objection from the appellant, and directed appellee to commence payment on the arrears upon the appellant's filing of a properly perfected proof of claim. *See id.* at 2. On 28 June 1999, the appellant filed a secured prepetition claim in the amount of $902.76. The claim described $563.91 as arrearage on debt; and $338.85 as bankruptcy attorneys fees, uncollected late charges, and other charges. *See id.*

---

[1] On September 19, 2000, this court (Guin, J.) granted the defendant creditors' Joint Motion to Consolidate Appeals, and designated as the lead case *Bank United v. Jessie M. Manley, CV-00-G-2141-W*. *See* Doc. # 5. Unless otherwise noted, all record references in this opinion are to the record developed in the *Bank United* case, including the decision of Bankruptcy Judge Stilson, or to the additional joint submissions of the parties filed subsequent to consolidation.

Appellee filed her adversary proceeding the very next day.  She appeared on behalf of herself and a class of persons similarly situated, and averred said fees as violating several provisions of the Bankruptcy Code and its related rules.   Specifically, she contended that the fees (1) were unreasonable, unauthorized and prohibited by the Code; (2) required bankruptcy court approval, of which there was none;  (3) violated the automatic stay provision of the Code; and (4) violated the Code and the Federal Rules of Bankruptcy Procedure generally.  *See id*. at 3.  Appellant moved pursuant to Federal Rule of Civil Procedure 12(b) to dismiss each of the counts in the complaint as to appellee individually and as to the putative class.  As grounds for the dismissal of the putative class action, the appellant argued both the absence of subject matter jurisdiction over the claims as well as the inadequacy of appellee as class representative.  *See id.* at 4-5.  The bankruptcy court denied this motion.  *See id*. at 31.[2]

In finding subject matter jurisdiction over the putative class action, the bankruptcy court held that the putative class claims were core bankruptcy proceedings arising under the Bankruptcy Code.  *See id*. at 23-26, 31; *see also* 28 U.S.C. §§ 157(b), 1334(b).  The putative class claims invoked "a cause of action or right or duty specifically created by the Bankruptcy Code," specifically 11 U.S.C. §§ 506(b)[3] and 362,[4] as well as Federal Rule of

---

[2]The appellant has not pursued on appeal the bankruptcy court's decision as it pertains to the appellee's individual claims. *See generally id.* at 6-18. Nor has the appellant pursued the bankruptcy court's apparent lack of consideration of its motion to dismiss appellee as an inadequate class representative. Accordingly, the court declines to review either of these issues in any detail.

[3]11 U.S.C. 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees,

(continued...)

Bankruptcy Procedure 7065.[5] *See* Mem. of Dec., at 3, 23, 25. The bankruptcy court rejected the idea that the putative class claims needed to impact the underlying bankruptcy estate for jurisdiction to exist. The court found this requirement relevant only in the context of a bankruptcy court's "related to" jurisdiction. For core proceedings arising under the code, like the putative class claims, the test was "irrelevant." *Id*. at 27.

The court also rejected the argument that the jurisdictional provision of the bankruptcy statutes designating a "home court" precluded the maintenance of a class action such as the appellee's. *See* 28 U.S.C. § 1334(e).[6] The court acknowledged that § 1334(e) provided "home courts" with exclusive jurisdiction over the estate property of a debtor. *See* Mem. of Dec., at 28. Nevertheless, the court construed the jurisdictional limitation as applying only when a claim has been resolved and "judgment converts the disputed claim into a finite unit of estate property . . . ." *Id*. at 30. Until then, jurisdiction is shared among the bankruptcy courts, and certain claims – the disposition of which affects issues of liability – can be heard by bankruptcy courts other than the home court. *See id.*

---

[3](...continued)
costs, or charges provided for under the agreement under which such claim arose.

[4]Section 362, in general, provides that "the filing of a bankruptcy petition acts as an automatic stay against actions or claims against the property of the bankruptcy estate." *Telfair v. First Union Mortg. Corp.*, 216 F.3d 1333, 1339-40 (11th Cir. 2000); *see also* 11 U.S.C. § 362(a).

[5]Federal Rule of Bankruptcy Procedure 7065 provides: "Rule 65 [of the Federal Rules of Civil Procedure] applies in adversary proceedings, except that a temporary restraining order or preliminary injunction may be issued on application of a debtor, trustee, or debtor in possession without compliance with Rule 65(c)."

[6]28 U.S.C. § 1334(e) provides: "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate."

4

at 28-29.[7]

The appellant subsequently sought leave to appeal this decision, and on 11 November 2000 it was granted appropriate relief by this court. *See* Doc. # 1, 6 (Guin, J.).[8] The issue underlying appellant's claim for interlocutory relief is whether the bankruptcy court erred in asserting subject matter jurisdiction over the putative class action. The parties have submitted briefs, and oral argument took place on 14 November 2001. The issue is thus ripe for decision.

## 2.    **Standard**

The appellate jurisdiction of the district courts extends to decisions of the bankruptcy courts, including the one now pending before this court. *See* 28 U.S.C. 158(a)(3); *see also Ohio Cas. Group of Ins. Cos. v. Professional Ins. Mgmt. (In re Professional Ins. Mgmt.)*, 130 F.3d 1122, 1125 (3d Cir. 1997); *Green Tree Acceptance, Inc. v. Calvert (In re Calvert)*, 907 F.2d 1069, 1071 (11th Cir. 1990). Factual findings of the bankruptcy court are properly reviewed by this court under the clearly erroneous standard. *See In re Professional Ins. Mgmt., supra, see also* Fed. R. Bankr. P. 8013; *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1322 (11th Cir. 1995). Conclusions of law, however, are reviewed *de novo. See In re Professional Ins. Mgmt., supra; Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209, 1210 (11th Cir. 1997).

---

[7]In reaching its ultimate conclusion, the bankruptcy court noted a general trend among courts to permit and adjudicate class actions. One specific decision from the Southern District of Alabama appears to have been quite influential on the court. *See* Mem. of Dec., at 18-19, 28; *see also Noletto v. NationsBanc Mortg. Corp. (In re Noletto)*, 244 B.R. 845 (Bankr. S.D. Ala. 2000) (Mahoney, B.J.).

[8]This appeal was transferred to the undersigned on 16 February 2001.

**3.    Discussion**

### A.    The Arguments of the Parties

The appellant challenges the decision of the bankruptcy court on several fronts.[9] Its most legally grounded argument avers error on the part of the bankruptcy court for failing to follow Eleventh Circuit precedent and require a jurisdictional "nexus" between the putative class action claims and appellee's bankruptcy estate. *See* Appellant Br. at 7-19. Appellant also offers a facially compelling argument sounding in both law and policy. This argument essentially maintains that the holding of the bankruptcy court improperly divests other home bankruptcy courts of their "exclusive jurisdiction" over the property and estates of the absent class members, as that jurisdiction is envisioned by the relevant statutory scheme and particularly the 28 U.S.C. § 1334(e). *See id.* at 20-24.

Rather than responding point by point to appellant's arguments, the appellee proffers her restatement of bankruptcy law, all at once attempting to rebut the defendant's positions while shoring up the decision now on appeal. She first draws the court's attention to the differences between the jurisdictional power granted to the district courts as opposed to the bankruptcy courts. *See* Appellee Br. at 3-6; *see also* 28 §§ U.S.C. 157 & 1334. Where the former is a true grant of subject matter jurisdiction, the latter is characterized as one of referral jurisdiction. *See* Appellee Br. at 4; *see also U.S. v. ILCO, Inc.*, 48 B.R. 1016, 1020

---

[9]Words alone cannot adequately covey the hyperbolic advocacy contained in some of appellant's briefs. For the record, however, the court notes appellant's concern that an affirmation of the bankruptcy court will produce "widespread jurisdictional conflict and chaos" and "turn the jurisdictional scheme of the Bankruptcy Code on its head." App. Br. at 2, 7. Likewise, the court notes as pertinent in this case (and in all cases involving the limited jurisdiction of the federal courts) the words of Dirty Harry in *Magnum Force*: "A man's got to know his limitations."

(N.D. Ala. 1985); N.D. Ala. R. Bankr. P. 1001-1 & App. A. The relevance of this distinction appears to be the following: if the district courts have jurisdiction over the bankruptcy case or proceeding, they can refer it to the bankruptcy courts. *See* Appellee Br. at 4-6. The appellee is somewhat unwilling to wed herself to this position though, for she claims that the bankruptcy courts are independently authorized by statute to adjudicate these class actions, because they are core proceedings arising under title 11. *See id.* at 5.

The appellee also directs the court to the venue and referral statutes applicable in bankruptcy cases. *See id.* at 6-8; *see also* 28 U.S.C. §§ 1408-1410, 1412, 1452. She contends that these statutes empower district courts with both procedural and substantive powers that necessarily render the district courts' bankruptcy jurisdiction plenary. *See* Appellee Br. at 7. The relevance of this plenary district court jurisdiction, according to appellant, is twofold. First, by the derivative reference of § 157, the bankruptcy courts are equally empowered with such plenary jurisdiction. Second, the plenary scheme envisioned by the referenced venue and removal statutes renders appellant's home court, exclusivity argument, an impossibility. *See id.* at 7-8.

### B. An Overview of Bankruptcy Court Jurisdiction

The jurisdiction of the bankruptcy courts is not unlike the jurisdiction of the district courts, in that both are controlled by statute. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 307 (1995). The means by which these statutes control jurisdiction differs greatly between the adjudicative bodies though, as the jurisdiction of the bankruptcy courts is a derivative of the jurisdiction of the district courts. The jurisdictional statutes empower the district courts with original and exclusive jurisdiction of all cases under title 11 of the United States

7

Code (the Bankruptcy Code); and original, but not exclusive, jurisdiction of all civil proceedings arising under title 11, all civil proceedings arising in cases under title 11, and all civil proceedings related to cases under title 11. *See* 28 U.S.C. §§ 1334(a), (b). The jurisdictional statutes also authorize the district courts to refer to the bankruptcy courts for the district, any or all cases under title 11; and any or all proceedings arising under title 11; any or all proceedings arising in a case under title 11, and any or all proceedings related to a case under title 11. *See* 28 U.S.C. § 157(a); *see also Celotex*, 514 U.S. at 307; *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000); *Continental Nat'l Bank v. Sanchez (In re Toledo)*, 170 F.3d 1340, 1344-45 (11th Cir. 1999). The jurisdictional statutes thus derivatively empower the bankruptcy courts, by first granting the district courts jurisdiction over bankruptcy cases and proceedings, and then authorizing the district courts to refer that jurisdiction to the bankruptcy courts. *See In re Toledo*, 170 F.3d at 1344.[10]

This referral of jurisdiction does not occur unchecked. A bankruptcy court referred jurisdiction over cases and proceedings may enter appropriate orders and judgments only when adjudicating cases under title 11, or "core" proceedings arising under or arising in title 11. 28 U.S.C. § 157(b)(1). A bankruptcy court referred jurisdiction over proceedings that are not "core" but are otherwise related to a case under title 11, may only submit proposed findings of fact and conclusions of law to the district court. Final orders or judgments in such proceedings issue only from the district court. 28 U.S.C. § 157(c)(1). Moreover, when a district court – such as this one – reviews the decisions of a bankruptcy

---

[10]Consistent with § 157(a), the Northern District of Alabama has, by a 1984 General Order of Reference, referred "to the [bankruptcy] judges for the district all cases under title 11 and all proceedings arising under title 11 or arising in or related to a case under title 11." *U.S. v. ILCO, Inc.*, 48 B.R. 1016, 1020 (N.D. Ala. 1985).

court, it exercises varying standards of review, depending upon whether the proceeding in bankruptcy court was a core or non-core proceeding. *See id.*; *see also In re Toledo*, 170 F.3d at 1350.

Several terms used in the statutory scheme warrant additional explanation. First, a title 11 "case" is different from a title 11 "proceeding." *See Christo v. Padgett*, 223 F.3d 1324, 1332 (11th Cir. 2000); *see also* 1 Lawrence P. King, *Collier on Bankruptcy* ¶ 3.01[3] (15th ed. rev. 1999) ("*Collier on Bankruptcy*"). A title 11 case "is the umbrella under which all of the proceedings that follow the filing of a bankruptcy petition take place." *Collier on Bankruptcy* ¶ 3.01[3]; *see also Irwin v. Beloit Corp. (In re Harnischfeger Indus.)*, 246 B.R. 421, 432 (Bankr. N.D. Ala. 2000). A title 11 proceeding is "anything that occurs within a case . . . encompass[ing] what are now called contested matters, adversary proceedings, and plenary actions under the current bankruptcy law." *Collier on Bankruptcy* ¶ 3.01[4][b]; *see also Christo*, 223 F.3d at 1332. The question on appeal concerns the power of a bankruptcy court to hear a particular type of proceeding.

The terms "core" and "non-core" are also of significant import. Recall that a bankruptcy court may enter orders and judgments only when adjudicating cases under title 11, or "core" proceedings arising under or arising in title 11. If the proceeding is non-core, the bankruptcy court may only propose findings of fact and conclusions of law to the district court. *See* 28 U.S.C. §§ 157(b)(1), (c)(1).

The core/non-core distinction finds it origin in the seminal case of *Northern Pipeline Construction Company v. Marathon Pipe Line Company.* *See id.*, 458 U.S. 50, 71 (1982). *See also United States Lines, Inc. v. American S.S. Owners Mut. Protection & Indem. Ass'n*

9

*(In re United States Lines, Inc.)*, 197 F.3d 631, 636-37 (2d Cir. 1999). In *Marathon*, a Chapter 11 debtor filed a pre-petition lawsuit in bankruptcy court and alleged several state law causes of action.  The defendant – who had not filed a proof of claim and had no other connection with the debtor's bankruptcy – moved to dismiss the claims on the ground that the Bankruptcy Act of 1978 unconstitutionally conferred Article III powers to non-Article III bankruptcy judges.  *See Marathon*, 458 U.S. at 56-57.  A plurality of the court agreed, holding "the broad grant of jurisdiction to the bankruptcy courts" violated Article III of the Constitution of the United States, by empowering non-Article III courts with the essential attributes of judicial power. *See id.* at 80-87.

Among the arguments proffered by the *Marathon* appellant in support of the bankruptcy courts was the public rights doctrine.  The public rights doctrine grows out of a "historically recognized distinction between matters that could be conclusively determined by the Executive and Legislative Branches and matters that are inherently judicial . . . ." *Id.* at 69. Matters that are inherently judicial – private rights – are not properly delegated to non-Article III courts. *See id.* at 69-70.[11] The *Marathon* appellants argued that

---

[11]As the Court wrote in *Marathon*:

> The distinction between public rights and private rights has not been definitively explained in our precedents. Nor is it necessary to do so in the present cases, for it suffices to observe that a matter of public rights must at a minimum arise "between the government and others." *Ex parte Bakelite Corp.*, [279 U.S. 438, 451 (1929)]. In contrast, "the liability of one individual to another under the law as defined," *Crowell v. Benson*, [285 U.S. 22, 51], is a matter of private rights. Our precedents clearly establish that only controversies in the former category may be removed from Art. III courts and delegated to legislative courts or administrative agencies for their determination. *See Atlas Roofing Co. v. Occupational Safety & Health Review Comm'n*, 430 U.S. 442, 450, n. 7 (1977); *Crowell v. Benson, supra*, at 50-51. *See also* Katz, Federal Legislative Courts, 43 Harv. L. Rev. 894, 917-918 (1930). Private-rights disputes, on the other hand, lie at the core of the historically recognized judicial power.

*Marathon*, 458 U.S. at 69-70.  The court notes that subsequent cases have cast doubt on whether the government

(continued...)

the rights associated with bankruptcy law fell within the ambit of public rights. The Court disagreed.

> Appellants argue that a discharge in bankruptcy is indeed a public right, similar to such congressionally created benefits as radio station licenses, pilot licenses, or certificates for common carriers granted by administrative agencies. But the restructuring of debtor-creditor relations, which is at the *core* of the federal bankruptcy power, must be distinguished from the adjudication of state-created private rights, such as the right to recover contract damages that is at issue in this case. The former may well be a public right, but the latter obviously is not.

*Id.* at 71 (emphasis added).[12]

Thus when Congress sought to cure the constitutional defects of the Bankruptcy Act of 1978 with the Bankruptcy Amendments and Federal Judgeship Act of 1984, it used the core/non-core distinction to delineate where and how the bankruptcy courts could operate, consistent with the commands of Article III and *Marathon*. In the area of core bankruptcy concerns – matters described by Congress in a detailed, but non-exclusive fashion in § 157(b)(2)(A-O) – the amended scheme authorized the referral of adjudicative powers consonant with traditional Article III courts (or legislative courts adjudicating public rights).

---

[11] (...continued)
must be a party to a matter alleged to involve a public right. *See Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 54 (1989).

[12] In its summation, the plurality noted that the essential attributes of judicial power improperly given to the bankruptcy courts included (1) an expansive jurisdictional reach; (2) the power to fully exercise that jurisdiction; (3) the power to exercise all the ordinary functions of a district court (e.g., issue declaratory judgments, writs of habeas corpus); (4) deference from reviewing courts; and (5) the power to issue final judgments. *See Marathon*, 488 U.S. at 85-86. Driving much of the opinion, however, was the recognition by the plurality that the non-Article III court could adjudicate state-created rights, a power never before extended to a non-Article III court. *See id.* at 71-72, 78-80; *see also Celotex v. Edwards*, 514 U.S. 300, 320-21 (1995) (Stevens, J., dissenting); *Crowell v. Benson*, 285 U.S. 22 (1932). Later cases have, however, weakened the relevance of a finding that a non-Article III court possessed adjudicative power over state-created rights. *See, e.g., Commodity Futures Trading Comm'n v. Schor*, 478 U.S. 833, 853-857 (1986); *cf. Granfinanciera, S. A. v. Nordberg*, 492 U.S. 33, 54-55 (1989).

In the area of non-core bankruptcy concerns – matters described only in reference to those proceedings "related to a case under title 11" – the amended scheme authorized a referral of far less power (recognizing the limitations of legislative courts in the adjudication of private rights). *See United States Lines*, 197 F.3d at 636-37. As the Fifth Circuit has explained:

> If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding; for example, an action by the trustee to avoid a preference. If the proceeding is one that would arise only in bankruptcy, it is also a core proceeding; for example, the filing of a proof of claim or an objection to the discharge of a particular debt. If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an "otherwise related" or non-core proceeding.

*In re Toledo*, 170 F.3d at 1348 (quoting *Wood v. Wood (In re Wood)*, 825 F.2d 90, 97 (5th Cir. 1987).

### C.   Analysis

The bankruptcy court found appellee's putative class claims to be core proceedings under the Bankruptcy Code. *See* Mem. of Dec., at 23, 31. Appellant is not heard to challenge this finding insofar as it extends to *appellee's own claims*. *See* Appellee's Br. at 3. The cases do not warrant otherwise. *See, e.g., In re Toledo*, 170 F.3d at 1345, 1348.[13]

---

[13]For other cases supporting this proposition, see *Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000) ("'Arising under' proceedings are matters invoking a substantive right created by the Bankruptcy Code."); *Halper v. Halper*, 164 F.3d 830, 836 (3d Cir. 1999) ("[A] proceeding is core . . . if it invokes a substantive right provided by title 11."); *United States Lines, Inc. v. American S.S. Owners Mutual Protection (In re United States Lines, Inc.)*, 197 F.3d 631, 637 (2d Cir. 1999) ("Proceedings can be core by virtue of their nature if . . . the type of proceeding is unique to or uniquely affected by the bankruptcy proceedings . . . ."); *In re United States Brass Corp.*, 110 F.3d 1261, 1268 (7th Cir. 1997) (Posner, J.) ("Core proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the strong sense that the Code itself is the source of the claimant's right or remedy, rather than just the procedural vehicle for the assertion of a right conferred by some other body of law

(continued...)

Furthermore, the court believes the following can be safely said of appellee's and the putative class members' claims. First, each claim appears to involve property as that term is used in the Bankruptcy Code.[14] Second, this property is the property of a respective estate, whether that estate be the appellee's or an absent class member. Third, the resolution of a claim will conceivably affect the claimant's, or his respective estate. *See* 11 U.S.C. § 541; *see also Johnson, Blakely, Pope, Bokor, Ruppel & Burns v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1279 (11th Cir. 2000). Finally, the resolution of a claim will not conceivably affect another claimant or that claimant's estate property. That is to say, resolution of the putative class member claims will not conceivably affect appellee or her estate, and vice versa.

The focal point of this appeal concerns the applicability of this fourth and final statement. When the bankruptcy court assumed jurisdiction over the putative class claims, it found the claims to be "core bankruptcy proceedings 'arising under' the Bankruptcy Code itself." Mem. of Dec., at 23. Any inquiry into the potential impact of those claims on the pending bankruptcy estate was, according to the bankruptcy court, unnecessary. *See id.* at 27.

---

[13] (...continued)
. . . ."); *In re Wood*, 825 F.2d at 97.

[14] Title 11 U.S.C. § 541(a) defines property of the estate as including among other things "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a); *see also United States v. Whiting Pools, Inc.*, 462 U.S. 198, 204 (1983). "The scope of § 541 . . . is broad, and includes property of all types, tangible and intangible, as well as causes of action." *Meehan v. Wallace (In re Meehan)*, 102 F.3d 1209, 1210 (11th Cir. 1997). "To this end the term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966); *see also Westmoreland Human Opportunities, Inc. v. Walsh*, 246 F.3d 233, 241-42 (3d Cir. 2001); *Matter of Yonikus*, 996 F.2d 866, 869 (7th Cir. 1993).

> The "impact on the bankruptcy estate" test for determining "related to"
> jurisdiction is irrelevant to the issue of whether the district court/bankruptcy
> court has subject matter jurisdiction of core bankruptcy proceedings arising
> under the Code itself. . . . In "arising under" jurisdiction, no such bridge to
> the bankruptcy process is needed. The causes of action are an integral part
> of the bankruptcy process itself, according to Congress' design.   The
> *Pacor/Lemco Gypsum* test of whether a lawsuit "could conceivably have any
> effect on the estate being administered in bankruptcy" is only relevant to
> determining if an action brought solely under state or other non-bankruptcy
> law is sufficiently "related-to" a "cause under title 11" (a bankruptcy case) to
> allow district court bankruptcy jurisdiction.

*Id.* Appellant contends that settled circuit precedent disputes this conclusion.[18] It maintains

that the jurisdictional powers of a bankruptcy court are limited to matters possessing a

"nexus" to a pending bankruptcy case. *See, e.g.*, Appellant's Br. at 1-2, 10 & n.8; *see also*

*Gallucci v. Grant (In re Gallucci)*, 931 F.3d 738, 742 (11th Cir. 1991).  When a proceeding

will not conceivably affect the pending bankruptcy estate being administered by the court,

no nexus exists and jurisdiction is wanting. *See, e.g.*, Appellant's Br. at 2, 6, 9.

   One obvious problem lading appellant's argument is its insistence upon a nexus

requirement in the context of both §1334(b) bankruptcy jurisdiction as well as the core/non-

core distinction of § 157.  Recent case law of this circuit clearly demonstrates that these

aspects of bankruptcy law are not interchangeable.  The status of a proceeding as core or

non-core does not affect the issue of jurisdiction.  Such status goes instead to how

jurisdiction will be exercised by the bankruptcy court, and what standards of review will

---

[18]Bankruptcy courts are, of course, bound by the controlling precedent of this circuit.  *Compare Turquitt v. Jefferson County*, 137 F.3d 1285, 1287 (11th Cir. 1998) (noting the binding effect of circuit precedent upon district courts); *Johnson v. DeSoto County Bd. of Comm'rs*, 72 F.3d 1556, 1559 n.2 (11th Cir. 1996) (same) *with Canfield v. Orso (In re Orso)*, 214 F.3d 637, 641 n.5 (5th Cir. 2000) (noting that bankruptcy court must follow circuit precedent), *reh'g granted* 242 F.3d 534 (5th Cir. 2001); *Casse v. Key Bank Nat'l Ass'n (In re Casse)*, 198 F.3d 327, 336 n.7 (2d Cir. 1999) (same).  Thus the bankruptcy court commits reversible error if it fails to follow or misapplies the precedent of this circuit.

later be employed by any reviewing district court. *See Kaiser Aerospace & Elecs. Corp. v. Teledyne Indus. (In re Piper Aircraft)*, 244 F.3d 1289, 1303 n.9 (11th Cir. 2001) ("[W]hether an issue is 'core' relates to how jurisdiction is exercised . . . rather than whether jurisdiction exists."); *see also* 28 U.S.C. §§ 157(b)(1); (c)(1).   The proper application of this distinction is well-illustrated by *In re Toledo.*

As the appellant observes in its brief, *Toledo* involved ostensibly core "determinations of the validity, extent, or priority of liens."  Appellant's Br. at 12; *see also* 28 U.S.C. § 157(b)(1)(K).  The district court had based the subject matter jurisdiction of the bankruptcy court in this fact, holding that jurisdiction existed because the dispute was a core proceeding. *See In re Toledo*, 170 F.3d at 1345.  The circuit court of appeals rejected this characterization, however, noting that the district court's holding "[b]lended the concepts of jurisdiction and the core versus non-core dichotomy . . . ." *Id.*; *see also id.* at 1345 n.6, 1349-50; 28 U.S.C. § 157(c)(1).   Appellant's argument presents a similarly flawed commingling.

*Toledo* instructs that the first issue to be resolved in a bankruptcy jurisdiction question is the type of jurisdiction being invoked. *See In re Toledo*, 170 F.3d at 1344-45. In *Toledo*, the court ruled out "arising under" or "arising in" jurisdiction, finding the proceeding at issue to neither invoke a substantive right under the code nor involve an administrative-type matter of the bankruptcy. *See id.*  The court did, however, find the presence of "related to" jurisdiction. *See id.* at 1345-46 ("The nexus with the bankruptcy estate contemplated by the *Lemco Gypsum/Pacor* test was present in two ways.").

With these jurisdictional concerns satisfied, the court *then* discussed whether the

15

proceeding at issue was core or non-core. Disagreeing with the district court, the appeals

court concluded that the proceeding was non-core under § 157(b)(2)(k), as it did not

involve property of the debtor or the estate. *See id.* at 1348.

> Nor do any of the other types of core proceedings appearing in § 157(b)'s list
> fit the instant adversary proceeding, especially in light of the fact that they are
> to be construed in light of the constitutional limitations that prompted their
> enactment.  To the extent that the literal wording of some of the types of
> proceedings might conceivably seem to apply, it should be remembered that
> engrafted upon all of them is an overarching requirement that property of the
> estate under § 541 be involved.

*Id.* (citations omitted).  This conclusion did not force the appeals court to reconsider its

finding of jurisdiction.  Rather, the court simply held the proceeding to be non-core, and

instructed the district court to apply the appropriate standards  of review to the findings of

the bankruptcy court.

> Because the district court mistook it for a core proceeding, it exercised only
> "clearly erroneous" review of the bankruptcy court's findings of fact and
> "abuse of discretion" review of the bankruptcy court's application of waiver
> and estoppel, despite the Bank's specific objections to those findings and
> applications.  We remand with instructions to the district court to treat the
> bankruptcy court's findings of fact and conclusions of law . . . as merely
> proposed findings of fact and conclusions of law, and to conduct the *de novo*
> review contemplated by § 157(c)(1) and Bankruptcy Rule 9033.

*Id.* at 1350.

Appellant's confusion of the line between jurisdiction and core/non-core does not

render its arguments immaterial.  This court must still ascertain whether the bankruptcy

court applied the proper legal standards.  And if statutory scheme and case law of this

circuit demand satisfaction of a jurisdictional nexus – whether that satisfaction be in the

context of jurisdictional questions, core/non-core questions, or both – this court must

16

determine whether the decision of the bankruptcy court comports with such a requirement.

### 1. *Pacor/Lemco Gypsum* and the Nexus

Appellant makes no attempt to definitively explain the term nexus. It oscillates between a broad relationship – established merely by a link between a proceeding and its title 11 case – and a narrow one – established only when the proceeding conceivably affects the bankruptcy estate being administered in the title 11 case. The latter requirement evokes the *Pacor/Lemco Gypsum* test, a test the bankruptcy court flatly refused to apply. *See* Mem. of Dec., at 27. The court thus begins its analysis here.

*Pacor/Lemco Gypsum* is the legal test used in this circuit to determine whether a proceeding properly falls within a bankruptcy court's "related to" jurisdiction. *See Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.)*, 910 F.2d 784, 788 (11th Cir. 1990) (adopting *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3d Cir. 1984)).

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Id.* (quoting *Pacor*, 743 F.2d at 994). *See also Carter v. Rodgers*, 220 F.3d 1249, 1253-54 (11th Cir. 2000); *Community Bank v. Boone (In re Boone)*, 52 F.3d 958, 961 (11th Cir. 1995).

Use of this test is properly limited to questions regarding a bankruptcy court's "related to" jurisdiction. *See, e.g., New Horizon of N.Y. LLC v. Jacobs*, 231 F.3d 143, 151 (4th Cir. 2000); *Corestates Bank, N.A. v. Huls Am., Inc.*, 176 F.3d 187, 204 (3d Cir. 1999);

*Halper v. Halper*, 164 F.3d 830, 837 (3d Cir. 1999); *In re Dow Corning Corp.*, 86 F.3d 482, 489 (6th Cir. 1996); *Walker v. Cadle Co. (In re Walker)*, 51 F.3d 562, 569 (5th Cir. 1995); *see also In re Toledo*, 170 F.3d at 1345.   Indeed, this court can find no instance within this circuit demonstrating an application of *Pacor/Lemco Gypsum* outside the context of a bankruptcy court's "related to" jurisdiction.[16]   Perhaps this is simply because other considerations assume the forefront when the jurisdiction invoked is not "related to" jurisdiction.

> To determine whether a proceeding is a "core" proceeding, courts of this Circuit must consult two sources.   First, a court must consult § 157(b). Although § 157(b) does not precisely define "core" proceedings, it nonetheless provides an illustrative list of proceedings that may be considered "core."   Second, the court must apply this court's test for a "core" proceeding.   Under that test, a proceeding is core [1] if it invokes a substantive right

---

[16]An arguable exception to this rule is *In re Gallucci*. Here, a trustee for a bankrupt estate brought a turnover action against the debtor's mother for the return of estate property. As a jurisdictional hook, the trustee invoked the statutory provision for turnover actions. *See* 28 U.S.C. § 157(b)(2)(E); *see also In re Gallucci*, 931 F.2d at 739-40. The *Gallucci* Court dismissed the case for lack of subject matter jurisdiction, finding the alleged turnover action be a non-core matter unrelated to the pending bankruptcy estate. *See In re Gallucci*, 931 F.3d at 742-44.

> If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction. This can be gleaned from a general principle of bankruptcy law: if the resolution of litigation cannot affect the administration of the estate, the bankruptcy court does not have jurisdiction to decide it.

*Id.* at 742. (emphasis added). The court did not reach this conclusion through a mere application of *Pacor/Lemco Gypsum*. First, it analyzed the turnover provision and determined that a predicate element necessary for the maintenance of the action was lacking. *See id.* at 742.

> Whenever a trustee brings a turnover action, he must establish, however, as part of his invocation of the bankruptcy court's summary jurisdiction, that the property he seeks to recover in the turnover action is property of the bankruptcy estate (property that will be available for distribution by the trustee). If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction.

*Id.* (citations and quotations omitted). Thus, when the court applied the *Pacor/Lemco Gypsum* test, it was applying it to a proceeding cognizable only through "related to" jurisdiction. And having no effect upon the estate, the proceeding could not be heard. *See id.* at 742 & n.15.

provided by title 11 or [2] if it is a proceeding, that by its nature, could arise only in the context of a bankruptcy case. *This Court and other courts of appeals have relied on this test to ensure that § 157(b) "core" proceeding jurisdiction is exercised in a manner consistent with Marathon.* Non-core proceedings include the broader universe of all proceedings that are not core proceedings but are nevertheless "related to" a bankruptcy case. "The test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy." *Pacor v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984).

*Halper*, 164 F.3d at 836-37 (3rd Cir. 1999) (citations and quotations omitted) (emphasis added); *see also Celotex Corp. v. Edwards*, 514 U.S. 300, 307-08 & n.5 (1995) (discussing the *Pacor* test in the context of "relating to" jurisdiction).

Nonetheless, decisions in this circuit time and time again employ a sweeping argot that suggests the propriety of an application of *Pacor/Lemco Gypsum* (or at least its test) whenever bankruptcy jurisdiction is in issue, and irrespective of whether the jurisdiction being invoked is "arising under", "arising in" or "related to." *See, e.g., In re Toledo*, 170 F.3d at 1348 ("[I]t should be remembered that engrafted upon all of [the types of core proceedings] is an overarching requirement that property of the estate under § 541 be involved."); *Munford v. Munford, Inc. (In re Munford, Inc.)*, 97 F.3d 449, 453 (11th Cir. 1996) ("In order for the bankruptcy court to exercise subject matter jurisdiction over a dispute . . . some nexus between the civil proceeding and the title 11 case must exist."); *In re Boone*, 52 F.3d at 961 ("[T]o fall within the court's jurisdiction, the plaintiffs' claims must affect the estate, not just the debtor."); *United States v. Challenge Air Int'l (In re Challenge Air Int'l)*, 952 F.2d 384, 388 (11th Cir. 1992) ("Jurisdiction of the bankruptcy court is limited to matters affecting the estate and the parties' conflicting claims to estate property."); *In re*

19

*Gallucci*, 931 F.2d at 742 ("If the action does not involve property of the estate, then not only is it a noncore proceeding, it is an unrelated matter completely beyond the bankruptcy court's subject-matter jurisdiction."); *see also Wood v. Wood (In re Wood)*, 825 F.2d 90, 94 (5th Cir. 1987) ("To fall within the court's jurisdiction, the plaintiff's claims must affect the estate, not just the debtor."). The relevance of these cases to the instant appeal is questionable, as each ultimately involves the "related to" jurisdiction of the bankruptcy court. Nevertheless, the court believes that they can be interpreted as standing for the jurisdictional nexus advanced by appellant. The court thus turns its focus here.

The idea of a jurisdictional nexus for all types of bankruptcy jurisdiction appears rooted in a pair of cases approved of by this circuit. The first of these cases is *Pacor*:

> The jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is not without limit, however, and there is a statutory, and eventually constitutional, limitation to the power of a bankruptcy court. For subject matter jurisdiction to exist, therefore, there must be some nexus between the "related" civil proceeding and the title 11 case.

*Pacor*, 743 F.2d at 994. The second is the *case of In re Wood*:

> For the purpose of determining whether a particular matter falls within bankruptcy jurisdiction, it is not necessary to distinguish between proceedings "arising under", "arising in a case under", or "related to a case under", title 11. These references operate conjunctively to define the scope of jurisdiction. Therefore, it is necessary only to determine whether a matter is at least "related to" the bankruptcy.

*In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987); *see also In re Toledo*, 170 F.3d 1344-45. Appellant's nexus argument is a synthesis of these cases – satisfaction of the *Pacor* "related to" standard as the necessary (or perhaps efficient) means of ascertaining bankruptcy jurisdiction generally. This argument, and the cases upon which it is built do not fully

articulate the range of facts that might satisfy the jurisdictional nexus; but they suggest that the estate itself must be impacted for any proceeding to relate to, and therefore be cognizable in, bankruptcy. *See, e.g.*, *In re Toledo*, 170 F.3d at 1348; *In re Boone*, 52 F.3d at 961; *In re Gallucci*, 931 F.2d at 742. Other cases exist, however, that suggest a more liberal stance, where the nexus requirement is satisfied when the proceeding involves the rights and duties of the debtor. *See, e.g.*, *In re Munford*, 97 F.3d at 453. *Pacor* itself is not entirely helpful. Recall the *Pacor* model of "related" proceedings includes a non-exclusive list of instances both affecting an estate and affecting a debtor. *See Lemco Gypsum*, 910 F.2d at 788 (quoting *Pacor*, 743 F.2d at 994). The court joined these two sets of instances conjunctively, however, and did not definitively answer the question of whether evidence of estate effect, debtor effect, or both, was necessary to satisfy the jurisdictional inquiry.

Having reviewed the statutes and the case law, this court believes that if a jurisdictional nexus is, in fact, required for all types of bankruptcy proceedings, that nexus must be satisfied by situations other than those anticipated by *Pacor/Lemco Gypsum*, "related to" jurisdiction. The jurisdictional nexus, as it pertains to proceedings arising under the bankruptcy code, must be satisfied when a party demonstrates that a bankruptcy proceeding will conceivably affect either the estate, or the debtor.[17]

---

[17]The court pauses here to express its general concerns about this "jurisdictional nexus." If this nexus requirement is simply shorthand for what is generally contemplated by the "arising under", "arising in" and "related to" language of statutory jurisdiction, the court sees little difficulty with its imposition. *See, e.g.*, *In re American Reserve*, 840 F.2d 487, 489 (7th Cir. 1988) ("The principle function of bankruptcy law is to determine and implement in a single collective proceeding the entitlements of all concerned."). The cases applying this shorthand, however, have done so in such a way as to blur the distinction among the three types of jurisdiction and what that jurisdiction means in terms of how bankruptcy courts exercise their powers.

*Marathon* and the amendments that followed clearly demonstrate that the bankruptcy courts can, consistent with Article III, adjudicate certain types of proceedings as if they were endowed with Article III powers.
(continued...)

Two obvious problems arise if this is not so. First, the three jurisdictional spheres of the bankruptcy scheme would be judicially collapsed into one. While it is certainly the emphatic province of the court to say what the law is, it is neither the province nor the desire of the court to rewrite the law. *See Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177 (1803); *see also United States v. Ron Pair Enters.*, 489 U.S. 235, 242 (1989) ("The plain meaning of legislation should be conclusive, except in the rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.") (quotations omitted, alterations in original). The jurisdictional statutes offer three types of bankruptcy proceedings cognizable in the district courts, and in the bankruptcy courts by referral. Requiring the application of the *Pacor/Lemco Gypsum* test to all three types blurs the statutory distinction present among them.

Second, but no less important, a single jurisdictional sphere that always requires proof of effects upon an estate fails to provide for those situations where a proceeding that should be cognizable in bankruptcy only affects the debtor. The case law clearly holds that a proceeding invoking a substantive right under the Bankruptcy Code falls within the bankruptcy court's "arising under" or core jurisdiction. *See, e.g., Carter v. Rodgers*, 220 F.3d 1249, 1253 (11th Cir. 2000); *In re Toledo*, 170 F.3d at 1345; *see also In re Wood*, 825 F.2d at 97 ("If the proceeding involves a right created by the federal bankruptcy law, it is a core proceeding."). A substantive right of this type is a claim of discrimination under the

---

[17](...continued)

Such proceedings are limited, however, to those of a core, bankruptcy nature. When different, non-core proceedings arise, the courts must yield to the commands and restrictions of Article III. The jurisdictional nexus requirement, at least as this court sees it, glosses over this distinction, and can produce results inconsistent with the statutory scheme. *See, e.g., In re Piper Aircraft*, 244 F.3d at 1303 n.9 ("[W]hether an issue is 'core' relates to how jurisdiction is exercised . . . rather than whether jurisdiction exists.").

code. *See* 11 U.S.C. § 525. This claim was in fact used by Congress as an example of the types of proceedings bankruptcy courts would be empowered to hear. *See Collier on Bankruptcy* ¶ 3.01[4][c] ("[A] claim of exemptions under 11 U.S.C. § 522 would be cognizable by a bankruptcy court, as would a claim of discrimination in violation of 11 U.S.C. § 525.") (quoting H.R. Re. No. 595, 95th Cong., 1st Sess. 445 (1977)). Yet a jurisdictional nexus requiring conjunctive proof of effect upon debtor and estate would preclude such a claim of discrimination in the instances where it only involved the debtor. That is to say, under appellant's argument, the bankruptcy courts would be foreclosed from asserting jurisdiction over a discrimination claim after the title 11 case had closed. The statutes do not contemplate this.

> Generally, jurisdiction over bankruptcy proceedings ceases with the closing of the bankruptcy estate, but Congress has stated that in some instances jurisdiction continues after the estate is closed because the proceeding would still "arise under" title 11. A § 525 prejudice proceeding was the example Congress used of such an instance. This follows from the principle underlying § 525, for if it protects former bankrupts from subsequent discrimination which results from previously discharged debts, then the cases must occur after the resolution of the bankrupt's estate.

*In re Bradley*, 989 F.2d 802, 804 & n.3 (5th Cir. 1993).

The conceivable limits of bankruptcy jurisdiction, therefore, must embrace matters beyond those simply affecting the estate. Proceedings affecting a debtor's rights, liabilities, options, or freedom of action are also valid proceedings cognizable by bankruptcy courts when they arise under the Bankruptcy Code. To contend otherwise strips the debtor of certain authorized (and perhaps implied) causes of action, and eliminates specific grants of jurisdiction. An expression of this principle is found in a recent decision from the Fifth

Circuit restating the *Pacor* definition of related:

> [A]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.  Conversely, "*bankruptcy courts have no jurisdiction over proceedings that have no effect on the debtor.*"

*In re Walker*, 51 F.3d at 569 (quoting *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995) (emphasis added)).

The court finds no error in the bankruptcy court's refusal to apply *Pacor/Lemco Gypsum* outside the context of "related to" jurisdiction.  But this conclusion, coupled with the discussion *supra*, merely begs the lynchpin of this appeal.

### 2.    **The Title 11 Case and the Nexus**

Appellant has not hinged its success solely upon the bankruptcy court's refusal to apply *Pacor/Lemco Gypsum*.  As stated *supra*, appellant proffers an expansive definition of nexus reaching across a broad spectrum.  A unifying element within the spectrum, however, is appellant's insistence of an actual link between the bankruptcy proceeding, and that proceeding's title 11 case.  In other words, even the most tenuous definition of "nexus" requires the presence of the debtor's title 11 case in the same judicial district in which the debtor has filed her proceeding.  The claims of the putative class members violate this principle, because their title 11 cases are scattered elsewhere across the nation.

The court does not find the cases cited by the appellant representative of this proposition.  Initially, the court notes that all the cases present "related to" jurisdictional questions.  *See In re Toledo*, 170 F.3d at 1344-45; *In re Munford*, 97 F.3d at 453-54; *In re Boone*, 52 F.3d at 961; *In re Challenge Air Int'l*, 952 F.2d at 385-86, 388; *In re Gallucci*, 931

F.2d 741-44. This appeal involves "arising under" jurisdictional questions, questions that touch upon claims invoking a substantive right created by the Bankruptcy Code. *See Carter v. Rodgers*, 220 F.3d at 1253; *In re Toledo*, 170 F.3d at 1345. An examination of the statutory scheme demarcating bankruptcy jurisdiction compels no different conclusion.

The statute bestowing jurisdiction over bankruptcy proceedings does so over those proceedings "arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). The text of this statute bears no facial requirement of a nexus between a proceeding arising under the code and its title 11 case. *See id.; see also In re Bradley*, 989 F.2d at 804 & n.3; *cf. Ron Pair Enterprises*, 489 U.S. at 242. Nevertheless, appellant cites to an influential treatise on the subject of bankruptcy law and maintains that "litigation that would not impact upon the administration of the bankruptcy case, or on property of the estate, or on the distribution to creditors, cannot find a home in the district court based upon its bankruptcy jurisdiction." Appellant's Br. at 15 (quoting *Collier on Bankruptcy* ¶ 3.01[4][c], at 3-27).

The problem with this argument is that it would render the individual class claims jurisdictionally flawed – irrespective of the substance of these claims – only when the claims present in judicial districts different from those in which the claims' respective title 11 cases are pending. In other words, appellant's construction of jurisdiction still leaves the putative class claims with a home – the judicial district housing their respective title 11 cases. Nothing in the language of § 1334(b) purports to require or even explain this anomaly. Moreover, the idea that statute might preclude a bankruptcy court from adjudicating an issue based solely upon where the issue is filed suggests questions of

proper venue, as opposed to subject matter jurisdiction.[18] *See Maritime Elec. Co. v. United Jersey Bank*, No. 90-6057, 1992 U.S. App. LEXIS 5144, at *7-*13 (3d Cir. March 24, 1992).

On the other hand, to liken bankruptcy arising under jurisdiction to federal question jurisdiction irrespective of the existence and location of a title 11 case risks ignoring any jurisdictional distinction that might be present in the case/proceeding dichotomy provided for by § 1334(b) and the referral scheme of § 157. *See Bass v. Denney (In re Bass)*, 171 F.3d 1016, 1026 (5th Cir. 1999) ("[I]t is clear that § 157 does not allow referral of a diversity or federal question jurisdiction case to the bankruptcy court when the case does not otherwise meet the requirement for jurisdiction of that court."). Upon reviewing the statutory scheme, however, the court does not believe that any potential implications created by this dichotomy factor here.

Venue in bankruptcy proceedings is controlled by 28 U.S.C. § 1409. Subsection 1409(a) provides that "a proceeding arising under title 11 or arising in or related to a case under title 11 may be commenced in the district court in which such case is pending." 28 U.S.C. § 1409(a). This provision is permissive. *See id.; see also Farmers Bank v. March (In re March)*, No. 2:92CV61, 1992 U.S. Dist. LEXIS 8090, at *4 n.3 (E.D. Va. May 29, 1992) (and cases cited). And more importantly, this provision can be waived. *See* 28 U.S.C. § 1406(b) ("Nothing in this chapter shall impair the jurisdiction of a district court of any matter involving a party who does not interpose timely and sufficient objection to venue."); *see*

---

[18] The court would be remiss if it did not acknowledge that location also plays a significant role in diversity jurisdiction cases under 28 U.S.C. § 1332. Legislative history taken from the 1984 amendments, however, suggests that Congress modeled bankruptcy jurisdiction after federal question jurisdiction under 28 U.S.C. § 1331, not the diversity statute. See *Collier on Bankruptcy* ¶ 3.01[4][c], at 3-18 to 3-19.

*also* Fed. R. Bankr. P. 7012 ("Rule 12(b)-(h) F.R.Civ.P. applies in adversary proceedings.");

*Peterson v. BMI Refractories*, 124 F.3d 1386, 1391 (11th Cir. 1997); *Feldman v. Skadden,*

*Arps, Slate, Meagher & Flom, LLP (In re United Merchants & Mfrs., Inc.)*, No. 99-5011, 1999

U.S. App. LEXIS 24381, at *5 (2d Cir. Sept. 22, 1999); *Diaz Contracting, Inc. v. Nanco*

*Contracting Corp. (In re Diaz Contracting, Inc.)*, 817 F.2d 1047 (3d Cir. 1987) (enforcing

a forum selection clause that required the litigation of an adversary proceeding in a judicial

district other than the district in which the title 11 case was pending).   Thus appellant's

interpretation of § 1334(b) jurisdiction cannot stand.  For not only does it create redundancy

between § 1409(a) and § 1334(b), it places them in direct conflict.  A fundamental principle

of federal court jurisprudence precludes the waiver of subject matter jurisdiction.  Yet as

noted *supra*, § 1409(a) venue is not only permissive, it can be waived.  The Supreme Court

has recognized that overlap among the various provisions of a statutory scheme is not an

uncommon occurrence.  But overlapping provisions will be given simultaneous effect only

when they do not create a positive repugnancy between them.  *See Connecticut Nat'l Bank*

*v. Germain*, 503 U.S. 249, 253 (1992).

If the statutes require a jurisdictional nexus for proceedings "arising under" title 11,

the court believes that such a nexus exists when the proceedings possess a link to a title

11 case.  That case need not be located, however, in the same judicial district in which the

proceeding is brought.   The putative class claims meet this requirement, leaving the

decision of the bankruptcy court in harmony with this conclusion.

Appellant argues that such a rule – taken to its logical extreme – allows debtors to

file their adversary proceedings in any judicial district in the nation, a sort of perverse

bankruptcy forum shopping not at all envisioned by the statutes. Appellant's argument rips the context from this case. The instant case does not involve a multitude of debtors proactively and individually seeking relief in an Alabama bankruptcy court. Rather, the instant case involves a named class representative with a title 11 case pending locally, appearing on behalf of and representative of a putative multitude. Moreover, the bankruptcy court will not be rendering a decision that affects every aspect of the individual class claims. *See* discussion *infra* part C.4. The court understands how the appellant is reaching its logical extreme. But the means by which it arrives there is not at all formed by the limited decision in this case.

### 3.    Core Proceedings and the Nexus

The court likewise believes that the bankruptcy court properly ascertained the class claims to be core proceedings. Notwithstanding the broad language of some cases suggesting that an effect upon estate property is necessary for a proceeding to be core, the court believes that any predicate requirement is satisfied in the instant case because the putative class claims invoke a substantive right under the bankruptcy code that will potentially affect a debtor or that debtor's estate. Once again, the rationale of the *Toledo* Court is instructive.

In *Toledo*, the court worked through a two-step analysis of the proceeding before it in determining whether the proceeding was core or non-core. First, the court considered the non-exhaustive list provided in § 157(b)(2). The court found the actual list provision invoked to be inapplicable, and subsequently ruled out the remaining list provisions of § 157(b)(2). In so doing, it made a statement that has since become a refrain for appellant

in this appeal: "it should be remembered that engrafted upon all of them [the core proceedings listed in 157(b)(2)] is an overarching requirement that property of the estate under § 541 be involved." *In re Toledo*, 170 F.3d at 1348 (citing *In re Gallucci*, 931 F.2d at 742). The *Toledo* Court did not stop with this refrain, however, but continued with the analysis.

The court next inquired into whether the proceeding might nonetheless be an unenumerated core proceeding. In considering this question, the court asked whether the proceedings invoked a law created by the federal bankruptcy scheme; and whether the proceeding could arise only in bankruptcy. Answering these questions in the negative, the court ruled the proceeding to be non-core. *See In re Toledo*, 170 F.3d at 1348-49.

The claims of the putative class members find no mention in the list provisions of § 157(b)(2). They do, however, meet the secondary requirements delineated in *Toledo*. First, the putative class claims invoke a law created by the federal bankruptcy scheme. As noted at the outset of this opinion, the bankruptcy court held the putative class claims to invoke "a cause of action or right or duty specifically created by the Bankruptcy Code," specifically 11 U.S.C. §§ 506(b) and 362, as well as Federal Rule of Bankruptcy Procedure 7065. *See* Mem. of Dec., at 3, 23, 25. Second, and perhaps more importantly, the putative class claims involve issues that arise only in bankruptcy. The core dispute in this case concerns the reasonableness of fees that the Bankruptcy Code permits collection pursuant to 11 § U.S.C. 506(b). Outside the context of bankruptcy, this dispute would not exist. This court, therefore finds that the bankruptcy court did not err in holding the putative class claims to be core proceedings arising under the bankruptcy code.

### 4. Exclusivity under 28 U.S.C. § 1334(e)

Appellant's final argument invokes the exclusivity provision of 28 U.S.C. § 1334(e): "The district court in which a case under title 11 is commenced or is pending shall have exclusive jurisdiction of all of the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." According to appellant, this requires the court entertaining a debtor's bankruptcy petition ("home court") to maintain exclusive jurisdiction over the property of that debtor, property which includes causes of action "central to the chapter 13 bankruptcy case." Appellant's Br. at 20; *see also supra* note 14. By asserting jurisdiction over the putative class claims, the bankruptcy court divested home courts across the nation of their exclusive jurisdiction under § 1334(e). *Id.*

The bankruptcy court rejected this argument. While acknowledging the home court scheme of § 1334(e), the court held that the exclusivity principle of § 1334(e) only affected the jurisdictional power of a court "when a judgment converts the disputed claim into a finite unit of estate property . . . ." *See* Mem. of Dec., at 28-30. Until then, § 1334(e) does not require the disposition of issues affecting liability to take place solely before the home court. *See* Mem. of Dec., at 28. Jurisdiction is shared between home courts and other courts, leaving the adjudication of certain claims to either. *See id.* at 28-29.

> For example, an Alabama debtor's Texas state court or Texas U.S. district court judgment proceeds must be routed through the trustee in the home bankruptcy court in Alabama pursuant to 28 U.S.C. 1334(e). But the Section 1334(e) limitation did not, by operation of law, deprive the Texas court(s) of Section 1334(b) subject matter jurisdiction to determine liability and amount beforehand.

*Id.* at 30. The bankruptcy court relied heavily upon the decision of another bankruptcy court

in reaching this conclusion. *See generally In re Noletto*, 244 B.R. 845, 853-54 (Bankr. S.D. Ala. 2000) (holding § 1334(e) to vest *in rem* jurisdiction in the home court "with the exclusive power to control and distribute property of the estate without requiring it to determine the extent of property of the estate."). This court believes this rule represents a plausible and workable interpretation of § 1334(e).

The position advocated by appellant creates an irreconcilable tension with the abstention, venue and removal provisions of title 28. *See* 28 U.S.C. §§ 1334(c), 1409, 1452; *see also In re Noletto*, 244 B.R. at 850. The permissive and mandatory abstention rules for bankruptcy matters are contained in 28 U.S.C. § 1334(c). Subsection 1334(c)(1) allows abstention when the interests of justice or comity with state courts or law so requires. *Id*. Subsection 1334(c)(2) mandates abstention when, upon timely motion, a proceeding in bankruptcy is based upon state law, is related to a cause under title 11, could not have been commenced in federal court but for § 1334(b) jurisdiction, and can be commenced and timely adjudicated in state court. 28 U.S.C. § 1334(c)(2).

> An expansive reading of § 1334(e) would render § 1334(c) virtually useless. "Exclusive" jurisdiction would preclude abstention when most appropriate. Most debtor complaints with state law issues could not be heard by a state court because they would be estate property subject to the exclusive jurisdiction of the district court in which the debtor's bankruptcy case is pending. Moreover, district courts are required to abstain under § 1334(c)(2) from proceedings that may include estate property, but state courts could not hear these proceedings because they are within the exclusive province of these same district courts. This illogical result could not have been the intent of § 1334.

*In re Noletto*, 244 B.R. at 852.

A similar incongruity is witnessed when appellant's interpretation of § 1334(e) is

compared with § 1409. Two subsections of § 1409 contain mandatory venue provisions. Subsection 1409(b) provides that the district in which the defendant resides is the only venue for proceedings "arising in" or "related to" a bankruptcy case brought by a trustee "to recover a money judgment of or property worth less than $1,000 or a consumer debt of less than $5,000." 28 U.S.C. § 1409(b). Subsection 1409(d) provides that a trustee may commence certain post-petition bankruptcy proceedings only in the district in which, "under applicable nonbankruptcy venue provisions, an action on such claim may have been brought." 28 U.S.C. § 1409(d). The home court rationale proffered by appellant would render these statutes meaningless, however, in the instance of proceedings involving estate property subject to §§ 1409(b) or (d). The mandatory language of the statutes do not envision such an exception. *See In re Noletto*, 244 B.R. at 852-53 (and cases cited).

The final relevant provision is the removal statute, which provides in relevant part: "A party may remove any claim or cause of action in a civil action . . . to the district court for the district where such civil action is pending, if such district court has jurisdiction of such claim or cause of action under section 1334 of this title." 28 U.S.C. § 1452(a). As the court in *Noletto* observed:

> If § 1334(e) gave exclusive jurisdiction over all proceedings involving estate property to the home court, then most bankruptcy proceedings pending in an outpost district could not be removed. Section 1452's limited applicability to the district court for the district where such civil action is pending would rarely have any meaning because only one district would have jurisdiction, the home court district.

*In re Noletto*, 244 B.R. at 851. Individually, these anomalies might be explained. In the aggregate, however, they dictate the conclusion reached by the bankruptcy court. *See also*

*Blachy v. Butcher*, 221 F.3d 896, 909 (6th Cir. 2000) (approving of the § 1334(e) analysis in *Noletto*); *Littleton Nat'l Bank v. Coleman American Cos. (In re Coleman American Cos.)*, 6 B.R. 251, 252-55 (Bankr. D. Colo. 1980) (finding the pre-1984 version § 1334(e) to not preclude litigation of certain matters by a non-home court).

Appellant directs the court to few pertinent cases suggesting a contrary result. One decision is worth noting. *See Williams v. Sears, Roebuck & Co. (In re Williams)*, 244 B.R. 858 (S.D. Ga. 2000). In *Williams*, the court permitted a debtor class action to proceed, but limited the class members to those title 11 cases pending in the judicial district. The court strictly applied the language of § 1334(e), offering no consideration of how its conclusion squared (or failed to square) with §§ 1334(c), 1409, and 1452. *See In re Williams*, 244 B.R. at 865-66. Furthermore, the *Williams* Court rejected the rationale adopted by an Illinois Bankruptcy Court which it characterized as being the only decision squarely finding jurisdiction over a debtor class action. *See In re Williams*, 244 B.R. at 864; *see also Aiello v. Providian Fin. Corp. (In re Aiello)*, 231 B.R. 693 (Bankr. N.D. Ill. 1999), *aff'd*, 239 F.3d 876, 881 (7th Cir. 2001) (Posner, J.).

Respectfully, the court disagrees with *Williams*. Simply put, the court does not believe that Congress envisioned the myriad of conflicts that a strict application of § 1334(e) would create with §§ 1334(c), 1409 and 1452. And in the absence of any suggestion to the contrary – from appellant, from *Williams*, or from the court's own review of the law – the court finds the decisions of the bankruptcy court and *Noletto* to represent more plausible

and workable interpretations of § 1334(e).[19]   Much of appellant's argument avers error on the part of the bankruptcy court for enlarging its own jurisdiction through an improper construction of § 1334(e). *See* Appellant's Br. at 19, 21-22. As the previous discussion should make clear, however, the court does not believe the bankruptcy court improperly enlarged its jurisdiction. The putative class claims are cognizable claims that invoke a substantive right under the bankruptcy code. The bankruptcy court, through the referral of power in § 157, may assert jurisdiction over them.

The court does recognize the validity of one point raised by appellant's arguments. "In some cases the debtors' relationships with the Creditors – and the propriety of the fees now challenged in the Alabama court – have already been adjudicated by other bankruptcy and district courts. Under the Bankruptcy Court's ruling, the decisions of those courts would impermissibly be subject to collateral attack." Appellant's Br. at 23. The court agrees that such concerns are legitimate. *See Celotex*, 514 U.S. at 313. Like the court in *Noletto*, however, this court believes that resolution of this issue is best left at the class

---

[19] Furthermore, *Williams'* rejection of *Aiello* leaves this court with several questions. In *Williams*, the court noted that the "distinctions among the three bases of a bankruptcy court's jurisdiction under § 157 are significant only with respect to the deference the bankruptcy court's decision will receive upon review." *In re Williams*, 844 B.R. at 865. This point is accurate and well-grounded in the law of this circuit. *See In re Piper Aircraft*, 244 F.3d at 1303 n.9; *In re Toledo*, 170 F.3d at 1345. But the opinion proceeds to observe that "[c]ontrary to the suggestion of *Aiello*, the inquiry into whether bankruptcy jurisdiction exists for a class action of the sort proposed by Plaintiff in this case would not seem to turn on whether the claim involves a "core bankruptcy matter" within the terms of § 157." *In re Williams*, 844 B.R. at 865. This does raise an interesting issue with respect to the nature of class actions, and whether the bankruptcy court might be authorized to issue orders and final judgments with respect to appellee's proceeding, but only proposed findings of fact and conclusions of law with respect to the class claims. It does not change, however, the fact that the class claims meet the requirements of "arising under" jurisdiction, and are accordingly cognizable for purposes of jurisdiction. *See In re Toledo*, 170 F.3d at 1345-46.

34

certification stage, if and when that time comes. *See In re Noletto*, 244 B.R. at 856-57.[20]

**4.      Coda**

The bulk of this opinion demonstrates why the case law and applicable statutes do not preclude the bankruptcy court from asserting subject matter jurisdiction over the putative class claims.  On a more affirmative level, the court believes that this conclusion advances the goals and purposes of the class action mechanism.  Class actions promote efficiency and economy in litigation.  Their design permits numerous parties to collectively litigate claims that might be uneconomical to litigate individually.  *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985); *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349 (1983).  Appellant's have argued throughout this case that the class actions here promote neither efficiency nor economy, but the court simply does not believe this to be true.

The appellee's own adversary proceeding serves as a wonderful illustration.  The event that triggered the proceeding underlying this appeal was the filing by appellant of a prepetition claim in appellee's bankruptcy case that included approximately three hundred dollars in fees.  To individually seek redress from the imposition of these fees would be of little obvious value to appellee (beyond the immeasurable, intrinsic value of succeeding in a lawsuit), for the transaction costs associated with an individual dispute would certainly (if not exponentially) outweigh the financial benefits that could accrue.  As a class, however, the investiture becomes significantly less.  The corresponding benefits are still not

---

[20]The appellant also points out that it is "axiomatic that the Bankruptcy Court cannot reopen cases closed by other courts."  If this is in fact an accurate statement of the law, the defect appears not of a jurisdictional nature.  *See In re Aiello*, 231 B.R. at 706-07 (and cases cited).  The court, therefore, believes that this issue is, too, best left for further consideration and resolution at the class certification stage.

guaranteed, as modern litigation is not the model of frugality, but in principle an outcome worth pursuing solidifies for the collective class.

As for appellant's concerns that bankruptcy law emphasizes the centralized resolution of bankruptcy issues, the collective resolution of bankruptcy-related liability here, in a bankruptcy court, seems fundamentally consistent with that goal.  Restricting class participation, as discussed *supra*, further guards against any unintended subversion, and ensures that the bankruptcy court disposition of estate property occurs consistent with § 1334(e).

Finally, the court must acknowledge Federal Rule of Bankruptcy Procedure 7023, which incorporates Rule 23 of the Federal Rules of Civil Procedure fully in adversary proceedings.  It is a truism to say that rules of procedure cannot expand the subject matter jurisdiction of courts.  Appellant's understanding of subject matter jurisdiction, however, requires one to believe that Congress intended to, *inter alia*, categorically foreclose debtor class actions arising under the bankruptcy code.  When coated with Rule 7023, such an already bitter pill becomes impossible to swallow.

5.     **Conclusion**

For the foregoing reasons, the court finds that the decision of the bankruptcy court is due to be and is hereby **AFFIRMED**.  The court will enter an appropriate order in conformity with this memorandum.

Done, this _29th_ of November, 2001.

EDWIN NELSON
UNITED STATES DISTRICT JUDGE

37